Hon. James L. Robart

Jason M. Ayres, WSBA #39141
Tara J. Schleicher, WSBA #26884
**FOSTER GARVEY PC**
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Telephone: (503) 228-3939
Jason.Ayres@foster.com
Tara.Schleicher@foster.com

Keith Ketterling (*pro hac vice*)
Lydia Anderson-Dana (*pro hac vice*)
Madeleine Holmes (*pro hac vice*)
Erin E. Roycroft (*pro hac vice*)
Anuj Shah (*pro hac vice*)
**STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kketterling@stollberne.com
landersondana@stollberne.com
mholmes@stollberne.com
eroycroft@stollberne.com
ashah@stollberne.com

*Counsel for Defendant Columbia Bank*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Lance Miller and Seth Freeman as Co-Trustees of the iCap Trust,<br><br>Plaintiffs,<br><br>v.<br><br>Columbia Bank f/k/a Umpqua Bank,<br><br>Defendant. | Case No. 2:25-cv-01870-JLR<br><br>JOINT RULE 26(f) REPORT |

Pursuant to Federal Rule of Civil Procedure ("Rule") 26 and Local Civil Rule ("LCR") 26, Counsel for Plaintiffs Lance Miller and Seth Freeman ("Plaintiffs") and Defendants Columbia Bank ("Defendants" and together, the "Parties") respectfully submit the following Joint Rule 26(f) Report. The Parties request a conference with the Court on scheduling and other issues presented herein.

**I. <u>Statement of the Nature and Complexity of the Case (Dkt 13 (No. 1))</u>**

This case is factually and legally complex. Chris Christensen formed iCap Enterprises, Inc. in 2007, and its direct subsidiary, iCap Equity, LLC in 2011, as real estate investment vehicles. iCap was based in Bellevue, Washington, and employed over 35 people by early 2023. As iCap expanded, it grew to include at least 31 related entities. However, investors directly invested into only six of these entities: iCap Pacific Northwest Opportunity and Income Fund, LLC ("Fund 1"); iCap Northwest Opportunity Fund, LLC ("Fund 2"), iCap Equity, LLC ("Fund 3"), iCap Funding, LLC ("iCap Funding"); iCap Investments, LLC ("iCap Investments"); and iCap Vault 1, LLC ("Vault 1"). As alleged by Plaintiffs, iCap solicited investments from over 1,800 investors before it ultimately ceased operations.

Plaintiffs allege that by 2019 iCap had become a fraudulent Ponzi scheme and that the Christensens' solicited investments by misrepresenting iCap's solvency and use of funds. Plaintiffs bring claims against Columbia, one of iCap's depository banks, for allegedly aiding and abetting the fraud committed by iCap, Chris Christensen, and his brother Jim Christensen. In 2023, iCap filed for Chapter 11 bankruptcy. The bankruptcy plan established the iCap Trust. The Trust, via the Plaintiff Trustees, brings individual investor claims assigned to the Trust. To date, over 900 investors have assigned their claims to the iCap Trust. Columbia denies liability.

**II. <u>Whether the Parties Consent to a Magistrate (Dkt 13 (No. 3))</u>**

The Parties do not consent to a Magistrate.

**III. <u>Settlement and Alternative Dispute Resolution (LCR 26(f)(1)(A-B), Dkt 13 (No. 5 (A-B))</u>**

**a. *Plaintiffs' Statement:***

Plaintiffs agree that a non-binding mediation will provide an opportunity to resolve this dispute by agreement and will work with Defendant to select a suitable neutral and determine the proper timing

for such a mediation. Plaintiffs, however, do not foresee a prompt settlement of this case in the near future.

**b. *Columbia's Statement:***

The Parties discussed the possibility of settlement. Columbia agrees that non-binding mediation may be helpful at a later stage in the case.

**IV. <u>Related Cases (LCR 26(f)(1)(C) (Dkt 13 (No. 5 (C))</u>**

**a. *Plaintiffs' Statement***:

Plaintiffs consider the iCap Bankruptcy case, *In re iCap Enterprises, et al.*, Lead Case No. 23-01243-WLH11 (Bankr. E.D. Wa.) as a case that does relate, in part, to this case.

**b. *Columbia's Statement***:

The Following cases are Related Cases:

- The iCap Bankruptcy case, *In re iCap Enterprises, et al.*, Lead Case No. 23-01243-WLH11 (Bankr. E.D. Wa.).
- Related adversary cases, including *Miller et al. v. Perkins Coie LLP*, Adv. Case No. 25-80084-WLH (Bankr. E.D. Wa.).
- *Miller et al. v. Christensen*, Case No. 25-cv-01943-JLR (W.D. Wa.).
- *Tan et al. v. Christensen, et al.*, 23-2-12786-2 SEA (Wa. Super. Ct.)
- *Liang, Zhang, Gu v. Christensen, et al.*, 23-2-13456-7 SEA (Wa. Super. Ct.)
- *Weiss v. iCap Vault I, LLC, et al.*, 23-2-13897-0 SEA (Wa. Super. Ct.)
- *Chen Xi v. iCap Vault I, LLC, et al.*, 23-2-14401-5 SEA (Wa. Super. Ct.)
- *Canon Financial Services Inc. v. iCap Equity LLC*, BUR-L-001638-23 (N.J. Super. Ct.)
- *Bosia et al. v. iCap*, 23-2-16200-5 SEA (Wa. Super. Ct.).

**PROPOSED SCHEDULE & TRIAL DATES**

The Parties did not reach agreement regarding the proposed schedule. Plaintiffs' and Columbia's preferred schedules are below. The Parties' proposals for when discovery can be completed and the date the case will be ready for trial are reflected in the proposed schedules (Dkt. 13 No. 6, 11).

Neither party's proposal contemplates a bifurcated trial (Dkt. 13 No. 7). The trial will be a jury trial (Dkt. 13 No. 12).

**V. Length of Trial & Trial Counsel Conflicts (Dkt. 13 Nos. 13, 15)**

Plaintiffs request 5 number of trial days. Plaintiffs' trial counsel have the following conflicts to be considered in setting a trial date: None known at this time.

Columbia anticipates four weeks of trial, or 20 trial days total. Columbia's trial counsel have the following conflicts to be considered in setting a trial date: August 2027 and September 2027 trial counsel will be in trial for another matter.

| Event | Plaintiffs' Proposed Deadline | Columbia's Proposed Deadline |
|---|---|---|
| Rule 26(f) Conference | Friday, June 19, 2026 | Friday, June 19, 2026 |
| Exchange of Initial Disclosures | Monday, June 29, 2026 | Monday, June 29, 2026 |
| Joint Status Report and Discovery Plan | Thursday, July 9, 2026 | Thursday, July 9, 2026 |
| Close of Fact Discovery | November 20, 2026 | Friday, March 24, 2028 |
| Deadline to Join Parties | November 20, 2026 | Friday, March 24, 2028 |
| Disclosure of Trial Experts | December 18, 2026 | Friday, May 26, 2028 |
| Disclosure of Rebuttal Experts | January 29. 2027 | Friday, July 14, 2028 |
| Close of Expert Discovery | March 26, 2027 | Friday, August 26, 2028 |
| Dispositive Motions Deadline | April 23, 2027 | Friday, October 27, 2028 |
| Responses to Dispositive Motions | May 13, 2027 | Friday, November 17, 2028 |
| Replies ISO Dispositive Motions | May 24, 2027 | Friday, December 8, 2028 |
| Trial Date | August 23, 2027 | Monday, April 2, 2029 |

## DISCOVERY PLAN

**VI. <u>Initial Disclosures (Rule 26(f)(3)(A) (Dkt 13 (No. 4 (A))</u>**

The Parties do not propose any changes to the disclosure rules or procedures and have already exchanged their Initial Disclosures on June 29, 2026, pursuant to the deadline established in the Court's Order granting the Unopposed Motion for Extension of Time. (ECF No. 31).

**VII. <u>Subjects & Timing of Discovery (Rule 26(f)(3)(B) (Dkt 13 Nos. 4 (B), 5 (E))</u>**

**a. *Plaintiffs' Statement:***

Discovery should be phased only as far as first completing fact witness discovery and then proceeding to complete expert witness discovery as a predicate to filing dispositive motions.

Discovery will be needed from Umpqua and its former and current employees on the following topics: (i) Umpqua's knowledge of the formation of the iCap Entities and/or Invalus, LLC, the nature of the business of all such entities, and the transactions into which each of them entered with Umpqua; (ii) Umpqua's provision of banking services, account services and/or loan services, including without limitation, all banking services involved in account opening and closing, account monitoring, loan or credit application review and disposition, security agreements, promissory notes, commercial pledge agreements, guarantees or indemnity agreements, monthly or other periodic account or loan statements, internal and external audits reports, internal or external loan reviews, underwriting, deposits, including cash deposits, interfund transfers, and all records of account deposits, checks, wire transfers or payments or defaults on any loans or credit extensions to the iCap Entities, and/or Invalus, LLC, Chris Christensen, James Christensen, and other iCap insiders, employees and Christensen family members, including transfers of funds from any accounts held in the name of one or more of the iCap Entities, Invalus, LLC, and any personal accounts of the iCap insiders, employees and Christensen family members; (iii) any due diligence, Enhanced Due Diligence, Customer Identification Program services, background checks (directly or through retained third-party vendors), Currency Transaction Reports (including any FinCEN Form 104) filed with the Financial Crimes Enforcement Network (FinCEN) and/or "Know Your Customer" and/or any other investigations conducted pursuant to any federal or state laws or regulations, including those conducted by the Financial Investigations Department, regarding any aspect of financial transactions involving the iCap Entities, Invalus, LLC, Chris

Christensen, James Christensen, iCap insiders, employees and Christensen family members; (iv) the creation, publication, amendment/supplement, application and enforcement of all corporate and/or banking policies and procedures Umpqua maintained relating to the Bank Secrecy Act, USA PATRIOT Act, including Know Your Customer, Customer Identification Program, Customer Due Diligence and Enhanced Due Diligence, customer risk ratings, account monitoring systems, Anti-Money Laundering, Currency Transaction Reports, and further including all fraud detection policies, account opening policies, wire transfer policies, bank teller policies, loan, overdraft and uncollected funds policies, Regulation CC and Availability of Funds (including providing immediate credit or delayed credit for deposits) policies, fraud account monitoring systems (i.e., Actimize, Athley, Bankers Toolbox, Patriot Officer, etc.) utilized by Umpqua, fraud system alerts and reports and any investigations performed as a result of any such alerts and all actions taken in response thereto; and (v) Umpqua employee compensation policies and programs, including merit or performance base compensation and bonus programs, and all employee reviews conducted pursuant to all such policies and programs, for all Umpqua employees who worked with or provided any banking services to the iCap Entities, Invalus, LLC, Chris Christensen, James Christensen, iCap insiders, employees and Christensen family members.

Additional discovery will likely be needed from: (i) certain brokers and financial advisors involved with or representing certain investors in the iCap funds that constituted the Ponzi scheme; and (ii) law firms and accounting and/or professional advisory firms who provided services to the iCap Entities, Invalus, LLC, Chris Christensen and/or James Christensen, including all professionals and employees of said firms.

Finally, there will likely be depositions of Plaintiffs' and Defendant's retained expert witnesses, if any. Plaintiffs dispute Columbia's contention that discovery from each investor that has assigned his or her claim to the Co-Trustee Plaintiffs to pursue on behalf of all Trust beneficiaries is necessary to establish the existence of iCap's Ponzi scheme. Plaintiffs reserve the right to brief the issues governing discovery and to rebut the legal arguments Defendant has included in this Status Report at the appropriate time as the Court requires.

**b.** ***Columbia's Statement:***

Columbia intends to take discovery on the following subjects:

1. Plaintiffs' knowledge regarding the identities of the assigning investors, the process by which investors assigned their claims to the iCap Trust, and the nature of the investments at issue.

2. Plaintiffs' knowledge regarding iCap's business practices and operations, iCap's solvency and financial status, and iCap and the Christensens' alleged fraudulent acts and omissions.

3. iCap investors' knowledge regarding the date and nature of their investments, and the alleged misrepresentations made to the investors by iCap, Chris Christensen, Jim Christensen, and other individuals associated with iCap.

4. iCap investors' knowledge regarding Columbia's alleged provision of banking services to iCap and the Christensens.

5. The dates on which each investor first invested in iCap and the net returns received by each investor.

6. iCap employees' knowledge and information regarding iCap's business practices and operations, iCap's solvency and financial status, and iCap and the Christensens' alleged fraudulent acts and omissions.

7. Chris Christensen's knowledge regarding iCap's business practices and operations, iCap's solvency and financial status, and iCap and the Christensens' alleged fraudulent acts and omissions.

8. Jim Christensen's knowledge regarding iCap's business practices and operations, iCap's solvency and financial status, and iCap and the Christensens' alleged fraudulent acts and omissions.

9. Knowledge and information obtained by individuals that assisted with the iCap bankruptcy.

10. Knowledge and information about iCap's business reputation, practices, and operations held by non-party brokers, auditors, accountants, attorneys, and banks that provided services to iCap.

11. Knowledge and information about iCap's business reputation, practices, and operations held by other third parties.

Columbia's proposed schedule includes a discovery period designed to accommodate the complexities of this case. Columbia believes the Parties cannot obtain sufficient discovery in less time, given the Parties' discovery needs as well as the significant procedural complications related to the identities of the Parties and the nature of the case.

To begin with, aiding and abetting fraud is a claim for secondary liability.[1] At summary judgment and trial, Plaintiffs will be required to prove the underlying fraud claim, as well as Columbia's actual knowledge of the alleged fraud and substantial assistance to the primary tortfeasor. In proving the underlying fraud claim, Plaintiffs will have to establish whether and when iCap ceased existing as a legitimate real estate investment company and became a fraudulent Ponzi scheme. Whether and when iCap became a Ponzi scheme is a central question in determining which, if any, investors were defrauded, as well as the amount of potential damages. iCap was a complex enterprise comprising numerous funds and entities. Determining whether, when, and which parts of the iCap business was fraudulent will involve an analysis of its operations, financial transactions, internal accounting data, investor records, investor communications, first-hand employee knowledge, and the knowledge of third parties, including iCap agents and advisors. Columbia will seek discovery of this information from the iCap Trust and from iCap's current and former officers, employees, and agents.

Additionally, there are significant procedural issues that necessitate a long discovery period. First, because Plaintiffs have brought this case as a mass action on behalf of assigning investors, as opposed to a class action, Plaintiffs will have the burden of proving each assignor's *individual* claim. Accordingly, Columbia will require extensive discovery to substantiate or challenge each investor's individual claims and to support its individual defenses to each investor's assigned claim. By way of example, Columbia will need discovery from individual investors on the investor's pre- and post-investment knowledge of iCap's operations, business model, investment strategy, and any representations made to the investor by iCap representatives. Columbia will also require information concerning the dates of each investor's investments, and the particular iCap fund or entity in which

[1] Plaintiffs initially filed a Complaint that also included a claim for aiding and abetting breach of fiduciary duty against Columbia, but have recently filed a First Amended Complaint which removes this claim. ECF No. 35.

each investor invested. Columbia will also need to seek what information investors have, if any, as to what Columbia knew about iCap's representations to investors.

Second, Counsel for Plaintiffs have informed Counsel for Columbia that their position is that they do not represent the assigning investors, and therefore, they cannot answer interrogatories on the investors' behalf or make investors available for depositions. Plaintiffs' position is incorrect. Judges routinely require assignors to participate in litigation of their assigned claims. "In the Ninth Circuit, a party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Chamber of Commerce of United States of Am. v. City of Seattle*, 334 F.R.D. 440, 441 (W.D. Wash. 2020) (citation modified). This rule extends to assignees of claims, as it would be "both logically inconsistent and unfair to allow the right to sue to be transferred . . . free of the obligations that go with litigating a claim." *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 506 (S.D.N.Y. 2005). Thus, an assignee remains responsible for compelling the cooperation of an assignor in the fulfillment of their discovery obligations. *Id.* at 507. An assignee cannot shift that burden to the defendant. *Id.*

If the Court nonetheless agrees with Plaintiffs' position on this issue, to obtain discovery from the assigning investors, Columbia will have to issue non-party deposition subpoenas or letters rogatory. Many of the investors are located outside of the United States, primarily in China. Columbia expects that this process will be time-consuming and result in significant delays of months or even years.

To summarize, Plaintiffs' decision to bring this case as a mass action, and Plaintiffs' position that they do not represent the assigning investors, means that, to obtain the minimum discovery from the investors that Columbia requires to evaluate Plaintiffs' claims and assert its defenses, Columbia may have to proceed with a highly burdensome and time-consuming process of issuing letters rogatory and deposition notices to hundreds of investors in foreign jurisdictions. Columbia is entitled to take discovery from each investor on the facts of each investment, the investor's knowledge relating to iCap, and Columbia's defenses.

In light of the above, Columbia proposes an initial process wherein:

1) Assigning investors provide sworn statements containing a standard set of information in response to Columbia's questions regarding each investor's knowledge of the alleged fraud, the time

and type of their investment, their geographic location at the time of the investment and now, and any financial advisor relationship;

2) Columbia then proposes to the Court the number and identities of the investors for whom Columbia believes it needs to depose, and whether Columbia requires depositions of each investor or only some;

3) Columbia conducts those depositions.

Finally, Columbia emphasizes that, in addition to the discovery described above, Columbia anticipates significant time spent responding to Plaintiffs' discovery requests. Plaintiffs have already issued 94 Requests for Production, including dozens of new requests for documents that were not included in Plaintiffs' requests to Columbia in the related bankruptcy case.

For the above reasons, Columbia respectfully requests that the Court adopt Columbia's proposed discovery plan and schedule.

## VIII. Discovery Limitations & Management of Discovery Plan (Rule 26(f)(3)(E), LCR 26(f)(1)(D), Dkt 13 Nos. 4 (E-F), 5 (D))

### c. *The Parties' Joint Statement:*

The Parties generally agree that each side may take more than the presumptive ten depositions but have not reached agreement as to the number allowed. The Parties otherwise agree that discovery is subject to the limitations set forth in the Federal Rules of Civil Procedure and Local Civil Rules.

The Parties will conduct formal discovery. The Parties agree to share discovery received from third parties, if any. The Parties further agree that costs of discovery will be borne by the party requesting said discovery, in accordance with LCR 26(f)(6).

The Parties agree that scheduling occasional case management conferences will be constructive in moving the proceeding forward. Although the Parties agree that submitting certain discovery disputes to the court by informal means can be a productive use of the Court's and Parties' time and resources, there will likely remain certain disputes requiring formal disposition.

The Parties request a status conference with the Court prior to the entry of any Scheduling Order. The Parties request an in-person conference. (Dkt 13 No. 17). The Parties do not request the use of an abbreviated pretrial order and do not, at this time, request other orders under LCR 16(c).

**d. *Plaintiffs' Statement***:

Other than the number of depositions, Plaintiffs are not aware of any changes that need to be made in the limitations on discovery imposed pursuant to the Federal Rules of Civil Procedure or the Local Civil Rules.

**D(i)** - Plaintiffs have already served Defendant with a Request for Production of Documents and asked that the Defendant produce four (4) individuals that are former or current bank employees for their respective depositions. Plaintiffs expect these depositions will occur after Columbia's document production has been received and processed for use during these proceedings.

**D(iii, iv and v)** - Plaintiffs agree that scheduling occasional case management conferences will be constructive in moving the Proceeding forward. Although Plaintiffs agree that submitting certain discovery disputes to the court by informal means can be a productive use of the court's and Parties' time and resources, there will likely remain certain disputes requiring formal disposition. Plaintiffs are in agreement with the court referring discovery disputes to a magistrate judge as the court deems it appropriate.

**D(vi and vii)** - Plaintiffs do not request the use of an abbreviated pretrial order and do not, at this time, request other orders under LCR 16(c). As set forth herein, the Parties do request the entry of a Scheduling Order consistent with the provisions of FRCP 16(b) and LCR 16(b).

**e. *Columbia's Statement***:

As outlined above, Columbia will require depositions from a number of iCap investors, in addition to Plaintiffs and other individuals associated with iCap and the iCap bankruptcy. Until Columbia receives initial information from each investor, it cannot estimate how many depositions will be necessary. As outlined more fully above, Columbia proposes an initial process wherein 1) the assigning investors provide a standard set of information in response to Columbia's questions, 2) Columbia uses that information to determine whether it will require depositions of each assigning investor, and 3) Columbia conducts investor depositions accordingly.

During conferral, Counsel for Plaintiffs represented to Counsel for Columbia that documents previously produced by Columbia to Plaintiffs in the related iCap Bankruptcy are considered produced in this matter and may be used subject to the Federal Rules of Civil Procedure and Rules of Evidence,

excepting any privileged documents or information that the Court agrees Columbia inadvertently produced and depending upon this Court's adjudication of Columbia's privilege claims. Plaintiffs have recently served Requests for Production on Columbia that far exceed the initial documents requested in the related iCap Bankruptcy and Columbia expects that collection and review may take several months.

**IX. <u>Preservation, Disclosure, or Discovery of ESI (Rule 26(f)(3)(C), LCR 26(f)(1)(G), (I), Dkt 13 Nos. 4 (C), 5 (G) (I))</u>**

**f. *Plaintiffs' Statement:***

Plaintiffs are not currently aware of any issues governing or relating to disclosure, discovery or preservation of electronically stored information. Plaintiffs are willing to adopt the Model ESI Agreement, subject to any agreed upon revisions, and to enter into such an agreement on or before any initial Status and Scheduling Conference to be held before the court.

**g. *Columbia's Statement:***

Columbia will agree to a modified version of the Model ESI Agreement. Columbia has taken reasonable steps to preserve electronic discovery and is not aware of any other issues relating to the preservation of discoverable information.

**X. <u>Claims of Privilege (Rule 26(f)(3)(D), Dkt 13 Nos. 4 (D), 5 (H))</u>**

**h. *Plaintiffs' Statement:***

Plaintiffs are not aware of any claim to privilege impacting discovery other than Defendant's assertion of privilege pursuant to the Bank Secrecy Act of 1970 ("BSA") in connection with certain documents produced in response to a Request for Production of Documents served upon Umpqua and Ordered by Hon. Judge Whitman L. Holt of the United States Bankruptcy Court, Eastern District of Washington pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1 on June 27, 2025 (the "2004 Request"). In its response to the 2004 Request, Columbia produced two sets of documents that it had previously produced in two other matters. Columbia produced what it represented was its production in *Li Tan et al. v. Christensen, et al.*, 23-2-12786-2 SEA (Wa. Super. Ct.). Columbia also responded to the 2004 Request by producing the same documents produced in response to an earlier Rule 2004 document request from the Unsecured Creditors Committee ("UCC")

in the iCap Bankruptcy case, *In re iCap Enterprises, et al.*, Lead Case No. 23-01243-WLH11 (Bankr. E.D. Wa.). Some of the documents Columbia produced in the bankruptcy case bear redactions, but Columbia did not produce a privilege log either to the UCC in the bankruptcy case or in response to the 2004 Request. Columbia then asked that Plaintiffs exchange certain documents bearing even greater redactions with certain of the previously redacted documents produced to the Committee. Plaintiffs sequestered the redacted documents in question pending a subsequent determination by this Court on the propriety of the claimed redactions.

**i. *Columbia's Statement:***

The Parties are in a pre-existing dispute regarding documents that were produced by Columbia to Plaintiffs in the related iCap bankruptcy. Among the documents produced by Columbia in the bankruptcy, were a number of inadvertently produced documents protected by federal confidentiality laws relating to the filing of Suspicious Activity Reports (SARs). See 12 C.F.R. §§ 353(g), 21.11(k) (deeming confidential "information that would reveal the existence of a SAR"); *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 43 (1st Cir. 2015) (holding that the SAR privilege covers documents that "suggest, directly or indirectly, that a SAR was or was not filed"). Columbia has sought to claw back documents and information protected by the SAR privilege. Plaintiffs represent that they have sequestered the documents but refuse to destroy them.

Columbia will seek the Court's assistance in resolving this dispute.

## XI. <u>Protective Orders (Rule 26(f)(3)(F) and LCR 26(f)(1)(H)</u>

The Parties agree that a protective order is appropriate for entry in this proceeding. The Parties intend to request a stipulated protective order permitting the Parties to designate discovery materials confidential. Certain documents anticipated to be requested and/or produced may contain confidential financial and business information.

The aforementioned protective order will address the procedure for asserting future claims of privilege after any inadvertent production of protected materials.

## XII. Rule 7.1 Disclosure Statements (Dkt. 13 No. 18)

Plaintiffs filed their Rule 7.1 Disclosure Statement on September 26, 2025.

Columbia filed its Rule 7.1 Disclosure Statement on August 27, 2026.

**XIII. Pretrial Statements and Orders (Dkt. 13 No. 8)**

At this time, the Parties do not propose dispensing with any of the pretrial statements and pretrial orders called for by Local Civil Rules 16(e), (h), (i), and (k), and 16.1.

Dated: August 28, 2026

Respectfully Submitted,

BUSH KORNFELD LLP

By: *s/ Jason Edward Wax*
Jason Edward Wax, WSBA #41944
jwax@bskd.com

601 Union Street, Suite 5000
Seattle, WA 97101
Telephone: (206) 292-2110
Facsimile: (206) 292-2104

Alan J. Kornfeld (*pro hac vice*)
akornfeld@pszjlaw.com
James W. Walker (*pro hac vice*)
jwalker@pszjlaw.com
Cia H. Mackle (*pro hac vice*)
cmackle@pszjlaw.com
Jeffrey Wayne Dulberg (*pro hac vice)*
jdulberg@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

*Attorneys for Plaintiffs Seth Freeman and Lance Miller as Co-Trustees of the iCap Trust*

FOSTER GARVEY PC

By: *s/ Jason M. Ayres*
Jason M. Ayres, WSBA #39141
Email: Jason.Ayres@foster.com
Tara J. Schleicher, WSBA #26884
Email: Tara.Schleicher@foster.com

1111 Third Avenue, Suite 3000
Seattle, WA 98101
Telephone: (503) 228-3939

*Attorneys for Columbia Bank f/k/a Umpqua Bank*

STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.

By: *s/ Madeleine Holmes*
Keith Ketterling (*pro hac vice*)
kketterling@stollberne.com
Lydia Anderson-Dana (*pro hac vice*)
landersondana@stollberne.com
Madeleine Holmes (*pro hac vice*)
mholmes@stollberne.com
Erin E. Roycroft (*pro hac vice*)
eroycroft@stollberne.com
Anuj Shah (*pro hac vice*)
ashah@stollberne.com

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

*Attorneys for Defendant Columbia Bank*